NUMBER
13-02-582-CV

                                 COURT OF
APPEALS

                     THIRTEENTH DISTRICT OF
TEXAS

                         CORPUS CHRISTI B EDINBURG

 

BOBBIE GILL,                                                                                   Appellant,

                                                             v.

ROBERT SLOVAK,                                                                            Appellee.

 

 

                On appeal from the County Court at
Law No.4

                                        of
Nueces County, Texas.

 

 

 

              MEMORANDUM
OPINION ON MOTION FOR REHEARING


 

     Before Chief Justice
Valdez and Justices Rodriguez and Garza

 

      Opinion by Chief
Justice Valdez

 

 

 








Appellant, Bobbie Gill, appeals from the verdict in
a jury trial resulting from a car accident caused by appellee, Robert
Slovak.  We grant the motion for
rehearing filed by appellant, withdraw our previous opinion dated December 22,
2004, and substitute the following as the opinion of this Court.  We affirm the judgment of the trial
court. 

Background

Gill and Slovak were involved in a two-car collision
in 1996.  Slovak ran a red light at an
intersection and his car collided with Gill=s
car.  Gill then sued Slovak for
negligence and claimed that the accident had aggravated her pre-existing neck
and back injuries so that she was required to undergo surgery and incur
significant medical expenses as well as suffer ongoing physical
impairment.  

Before trial, Gill filed a Robinson challenge
to exclude the testimony of Slovak=s accident-reconstruction expert, Thomas McNish,
M.D.  The trial court held a pre-trial Robinson
hearing and issued a written order overruling Gill=s objections to Dr. McNish who was then able to
testify at trial as to his findings.

At trial, Slovak stipulated to his liability for
negligence in the accident.  The jury was
charged only with determining the proper amount of damages to award Gill for
her injuries.  The jury returned a
verdict awarding total damages of $29,218 to Gill.  








Gill filed a motion for new trial, asserting that
the damage findings were inadequate.  Her
motion was overruled, and she appealed the findings to this Court.  On appeal, Gill asserts that (1) the
testimony of Slovak=s accident-reconstruction expert was inadmissible
expert testimony under Robinson, (2) Dr. McNish=s testimony was also incompetent and constituted Ano evidence@ under Havner, (3) there was legally
insufficient evidence to support the jury=s damage award, and (4) the trial court erred in
refusing to allow cross-examination of Dr. McNish regarding bias.  

Robinson Challenge

By her first issue, Gill argues that Dr. McNish=s testimony was inadmissible because it failed to
meet the reliability requirements of Robinson.  

A trial court=s decision to admit or deny evidence, including the
testimony of expert witnesses, is reviewed on appeal for an abuse of
discretion.  Exxon Pipeline Co. v.
Zwahr, 88 S.W.3d 623, 629 (Tex. 2002).   









For an expert's testimony to be admissible under the
rules of evidence and the Robinson standard, (1) the expert must be
qualified, and the expert's opinion must be (2) relevant to the issues in the
case and (3) based upon a reliable foundation. Tex. R. Evid. 702; Gammill v. Jack Williams Chevrolet, Inc.,
972 S.W.2d 713, 720 (Tex. 1998); E.I. du Pont de Nemours & Co. v.
Robinson, 923 S.W.2d 549, 556 (Tex. 1995).  
A party preserves her Robinson challenge to the evidence by
raising it at the trial level or in a pre-trial motion.  See Guadalupe‑Blanco River Auth. v.
Kraft, 77 S.W.3d 805, 807 (Tex. 2002); Mar. Overseas Corp. v. Ellis,
971 S.W.2d 402, 409 (Tex. 1998). 
However, once the trial court makes a ruling, a party may not then
introduce the complained-of evidence herself and still maintain on appeal that
she has preserved her Robinson challenge to admissibility.  See Southwestern Elec. Power Co. v.
Burlington N. R.R., 966 S.W.2d 467, 473 (Tex. 1998); McInnes v. Yamaha
Motor Corp., U.S.A., 673 S.W.2d 185, 188 (Tex. 1984) (appellant cannot
complain of admission of improper evidence introduced by himself).  Furthermore, when a party elicits
testimony from a witness, that party typically may not later complain of the
admission of the unfavorable testimony.  See
Varel Mfg. Co. v. Acetylene Oxygen Co., 990 S.W.2d 486, 499 (Tex. App.BCorpus Christi 1999, no pet.).  This rule also holds true in the context of
expert witnesses.  See Huckaby v. A.G.
Perry & Son, Inc., 20 S.W.3d 194, 208 (Tex. App.BTexarkana 2000, pet. denied) (ABecause the Huckabys permitted [the expert]
testimony about the very matter of accident reconstruction about which they now
complain on appeal, they have waived any alleged error.@).

In the present case, Gill called Dr. McNish to
testify in her case in chief.  Through
counsel, Gill introduced the very expert testimony on the topic of accident
reconstruction that she now seeks to have stricken.  Although Dr. McNish was originally hired as
Slovak=s expert, he was called on direct examination by
Gill, as Slovak=s counsel pointed out at trial: A[W]e=ve got a crazy situation here because [Gill=s counsel]=s called my witness as an adverse witness,
okay.  So he=s called my witness B he
subpoenaed him from San Antonio and asked him to come down here, okay.  This is not as if I=m on direct examination . . . .@           Although Gill properly preserved her Robinson
objection at the pre-trial hearing, she then waived this objection by
directly examining the witness herself.  See McInnes, 673 S.W.2d at 188.  Accordingly, we consider this complaint
waived and her first issue overruled.

Havner Challenge

By her second issue, Gill argues that the trial
court erred in refusing to find that Dr. McNish=s
expert testimony was tantamount to Ano evidence@ and incompetent under Havner. 








Under Havner, a party may complain on appeal
that scientific evidence is unreliable and constitutes no evidence to support a
judgment.  See Merrell Dow
Pharms., Inc. v. Havner, 953 S.W.2d 706, 711 (Tex. 1997).  When reviewing a no‑evidence challenge,
we usually "view the evidence in a light that tends to support the finding
of the disputed fact and disregard all evidence and inferences to the
contrary."  Bradford v. Vento,
48 S.W.3d 749, 754 (Tex. 2001).  

Havner recognizes
that a no evidence complaint may be sustained when the record shows one of the
following:  (a) a complete absence of a
vital fact; (b) the reviewing court is barred by rules of law or evidence from
giving weight to the only evidence offered to prove a vital fact; (c) the
evidence offered to prove a vital fact is no more that a mere scintilla; or (d)
the evidence establishes conclusively the opposite of the vital fact.  See id. at 711.  In determining whether an expert's testimony
constitutes no evidence or some evidence under Havner, however, "an
expert's bare opinion will not suffice" and "the substance of the
testimony must be considered." Havner, 953 S.W.2d at 711.  Furthermore, "the underlying data should
be independently evaluated in determining if the opinion itself is
reliable."  Id. at 713; see
Guadalupe‑Blanco River Auth. v. Kraft, 77 S.W.3d 805, 808 (Tex.
2002).  If the expert's testimony is not
reliable, it is not evidence.  Havner,
953 S.W.2d at 713.  








Slovak asserts on appeal that because Gill elicited
the complained-of testimony from Dr. McNish, she has waived any error relating
to her Havner no-evidence objection in addition to having waived her Robinson-related
error.  We disagree.  The Texas Supreme Court has clarified the
distinction between a Havner no-evidence challenge to the testimony of
an expert based on speculative or conclusory testimony elicited at trial, for
which no trial court objection is necessary, and a Robinson complaint as
to the methodology or qualifications of the expert which must be objected to
before or during trial to preserve error. 
See Coastal Transp. Co., Inc. v. Crown Central Petroleum Corp.,
136 S.W.3d 227, 233 (Tex. 2004).  When a
party challenges the testimony of an expert not under Robinson but
instead for its substantive value, Athen a party may challenge the legal sufficiency of
the evidence even in the absence of any objection to its admissibility.@  Id.  Thus, despite our conclusion that she has
waived any Robinson-related error from Dr. McNish=s testimony, Gill may still object to the substance
of the evidence as being legally insufficient to support the verdict. 

Turning to the no evidence review of Dr. McNish=s testimony, we see that Dr. McNish testified that
he conducted an injury causation analysis based on physics and biomechanics in
order to determine what forces were exerted on Gill=s body during the accident and what bodily injuries
that impact may have caused.  Dr. McNish utilized
the following underlying data:  (1)
photographs of the damaged vehicles; (2) information from the Motor Vehicle
Manufacturers= Association on the weight, center of gravity,
dimensions, and other properties of the vehicles; (3) testimony of Gill
regarding the circumstances of the accident; (4) testimony of Slovak regarding
the circumstances of the accident; (5) the police accident report; (6) aerial
photographs of the accident site; (7) diagrams of the intersection; (8) repair
estimates on both Gill and Slovak=s vehicles; (9) the depositions of Gill=s various physicians from before and after the
accident; and (10) Gill=s medical records from both before and after the
accident.  Dr. McNish used the data
gleaned from these sources to create numerical data that was then inputted into
a computer program that simulated the accident and predicted the resulting
injuries.  








Based on his evaluation of the information available
and covering any informational gaps by inserting estimates that would be most
favorable to Gill, Dr. McNish testified that he believed the forces and
direction of the forces involved in this accident could not have caused the
condition that led to Gill=s surgeries after the accident.  He concluded instead that the forces involved
in the accident would only have caused minor bruising and muscle strain.  Dr. McNish explained each of the estimates he
made and the various assumptions he made when developing his estimates, all of
which the jury was able to weigh or reject. 
See Barrajas v. Via Metropolitan Transit Auth., 945 S.W.2d 207,
209 (Tex. App.BSan Antonio 1997, no writ) (A[A] jury may choose to be guided by expert testimony
. . . but it is not bound by it [and] the jury may disbelieve a witness,
including a physician, even though his testimony is not contradicted.@).

Gill argues that Dr. McNish did not properly account
for her preexisting back and neck injuries when applying his conclusions to her
physical reaction; however, in our review of Dr. McNish=s testimony we see that he in fact directly
addressed her preexisting condition throughout his discussion of the accident
and took it specifically into account when developing his conclusions.[1]  








Havner
requires us to determine whether the evidence conclusively established the
opposite of Dr. McNish=s conclusion, in which case his testimony would be
considered no evidence.  Havner,
953 S.W.2d at 711.  Dr. McNish adequately
supported the conclusion he drew from the evidence, that is, that Gill=s preexisting injuries were not aggravated by the forces
of the accident.  Gill called several
additional expert witnesses to the stand; however, only one of these witnesses
responded to the causation testimony proffered by Dr. McNish.  Gilbert Meadows, Ph.D., who had treated Gill
for back injuries following the 1996 accident, did note that there was a
herniation in Gill=s neck after the 1996 accident with Slovak that had
not been present before the accident. 
However, another physician who had previously treated Gill for her back
problems noted that, AI think had she never had another injury at all, I
think sooner or later in her lifetime she would have required surgery, based on
what I saw back in 1991.@

In light of all the evidence adduced at trial, we
see that the evidence at best raised a factual dispute as to Dr. McNish=s findings but failed to conclusively establish the
opposite of his conclusion.  We conclude
that Dr. McNish=s testimony met the Havner test and was
properly considered to be some evidence of the circumstances of the accident
and its effect on Gill=s health.  See
id.  Gill=s second issue is overruled.

Jury Award

By her third issue on appeal, Gill argues that the
jury=s damage award is supported by legally insufficient
evidence.  Specifically, she argues that
the amounts awarded in each of the various categories of damages were against
the great weight and preponderance of the evidence because (1) with respect to
causation, Dr. McNish=s testimony is incompetent and constitutes no
evidence, and (2) with respect to the amount of damages, the undisputed
evidence supports amounts substantially greater than those awarded by the
jury.  Because we have determined that
Dr. McNish=s testimony satisfied Havner and could
properly be considered evidence relating to causation, we consider only the
latter of Gill=s complaints about the adequacy of the jury
award.  








When we review a legal-sufficiency point, we must
consider all of the record evidence in a light most favorable to the party in
whose favor the verdict has been rendered and indulge in that party=s favor every reasonable inference deducible from
the evidence.  See Formosa Plastics
Corp. U.S.A. v. Presidio Eng=rs & Contractors, Inc., 960  S.W.2d
41, 48 (Tex. 1998). We disregard all contrary evidence that a reasonable jury
could have disbelieved.  See City of
Keller v. Wilson, 168 S.W.3d 802, 819 (Tex. 2005).  








The amount of damages to be awarded in negligence
cases is primarily a matter for the jury to determine.  SunBridge Healthcare Corp. v. Penny,
160 S.W.3d 230, 247 (Tex. App.BTexarkana 2005, no pet.); Dico Tire, Inc. v.
Cisneros, 953 S.W.2d 776, 791-92 (Tex. App.BCorpus
Christi 1997, writ denied).   Each case must be measured by its own facts,
and considerable discretion and latitude must be given to the jury's
award.  Weidner v. Sanchez, 14
S.W.3d 353, 372 (Tex. App.BHouston [14th Dist.] 2000, no pet.).  In considering and weighing the evidence, we
must defer to the fact‑finder as the final determiner of the credibility
of witnesses and the weight to give their testimony.  See SunBridge Healthcare, 160 S.W.3d at
247.   Conflicts in the evidence and
inferences to be drawn from them are for the jury to resolve.  Dico Tire, 953 S.W.2d at 791; Hughes v.
Thrash, 832 S.W.2d 779, 786 (Tex. App.BHouston [1st Dist.] 1992, no writ).  When the elements of damages considered by
the jury include the more amorphous, discretionary damages, such as mental
anguish, pain and suffering, physical impairment, and disfigurement, any amount
awarded above the more definitive past medical expenses and lost wages will be
left to the discretion of the jury.  Dico
Tire, 953 S.W.2d at 791-92.  The
determination of the amount of money that will compensate the plaintiff for
physical injuries, impairment, and mental anguish involves a consideration of
elements for which no mathematical standard exists except what an honest or
impartial jury may deem adequate.  Id.
at 792. 

A verdict will be set aside on appeal only where the
record clearly indicates that the award was based on passion, prejudice, or
improper motive, or is so excessive as to shock the conscience.   See SunBridge Healthcare, 160 S.W.3d
at 247-48.  As long as sufficient
probative evidence exists to support the jury's verdict, this Court will not
substitute its judgment for that of the jury. Id. at 248 & n. 11; Dico
Tire, 953 S.W.2d at 792.  

The jury awarded the following damages: 

Medical
care in the past:                                          $6,920.00

Medical
care in the future:                                        $1.00

Loss
of earnings in the past:                                    $1,530.00

Loss
of earnings in the future:                                  $1.00

Household
services in the past:                              $1.00

Disfigurement
in the past:                                        $1.00

Disfigurement
in the future:                          $1.00

Physical
impairment in the past:                             $1.00

Physical
impairment in the future:               $1.00

Physical
pain and mental anguish in the past:       $20,760.00

Physical pain and mental anguish in the future:
$1.00








Because Gill asserts that Dr. McNish=s testimony was incompetent and inadmissible, she
characterizes the testimony of her own witnesses as undisputed.  However, as we have concluded that Dr. McNish=s testimony was admissible, we do not consider Gill=s evidence alone. 
Gill also asserts that the amount of damages was undisputed; however, we
note that although the total amount of medical expenses claimed by Gill appears
to be undisputed, the fraction of this total amount owed by Slovak is still in
dispute between the parties and Slovak never stipulated that he was liable for
the whole amount.

As previously noted, Dr. McNish testified that Gill=s injuries and pain were not caused or aggravated by
the accident with Slovak.  Gill=s witnesses, who included Gill herself, her mother
and sister, and several doctors, disagreed and claimed that all or most of Gill=s post-accident expenses were caused by the Slovak
accident.  Dr. Meadows, as noted, stated
that it was Ano question there was a herniation after the
accident.@  Gill=s neuropsychologist, Philip Gasquione, Ph.D.,
reported that Gill scored high on a hypochrondrial scale and that there was a Astrong psychological component@ to her reported physical pain.  Warren Neely, M.D., a neurological surgeon
who had previously treated Gill, noted that she already had a series of earlier
back injuries and pain and opined that additional surgery on Gill=s back would have been inevitable even without the
aggravation to her pre-existing condition from the Slovak accident.  Gill admitted that she had refilled a
prescription for pain medication shortly before the accident although she
denied that she had actually been in pain. 
Gill also testified at length regarding her deteriorating physical
condition and additional pain and suffering following the accident with Slovak.  








As fact-finder, the jury was free to evaluate and
accept or reject the testimony it heard. 
Dico Tire, 953 S.W.2d at 791. 
The jury clearly accepted some, but not all, of the testimony, as the
ultimate amount of damages awarded, $29,218, was both greater than that requested
by Slovak but less than that claimed by Gill. 
There is no indication in the record that the jury was improperly
motivated by passion or prejudice, and the award is not so excessively large or
small as to shock the conscience.  See
SunBridge Healthcare, 160 S.W.3d at 247-48. 
Furthermore, there was evidence presented on all the damage categories
presented to the jury: past and future medical care, past and future earnings
losses, previous losses of household services, past and future disfigurement
and physical impairment, and past and future physical pain and mental
anguish.  Disregarding all unreasonable
contrary evidence, we conclude the evidence is legally sufficient to support
the jury=s findings on damages.  See City of Keller, 168 S.W.3d at
819.  We overrule appellant=s third issue on appeal.

Evidence of Bias

By her fourth issue on appeal, Gill asserts that the
trial court erred in refusing to admit evidence regarding Dr. McNish=s alleged bias. 
Dr. McNish stated in his testimony that he was employed by Biodynamics
Research Corporation and was also a two percent shareholder in the
company.  Gill sought to examine Dr.
McNish regarding over a million dollars in fees paid to Biodynamics by Slovak=s insurance provider over the five years prior to
this case, alleging that this would impeach Dr. McNish=s testimony by demonstrating bias.  The trial court refused to allow this line of
questioning, although Gill was able to question Dr. McNish regarding $40,000 in
fees he had charged for his involvement in the current case.  Gill now argues on appeal that the exclusion
of the evidence of bias was erroneous and probably led to the rendition of an
improper judgment.    








The decision whether to admit or exclude evidence is
within the discretion of the trial court. 
City of Brownsville v. Alvarado, 897 S.W.2d 750, 753 (Tex.
1995).  To be admissible, evidence must
be relevant and must not be more prejudicial than probative.  See Tex.
R. Evid. 402, 403.  To obtain
reversal of a judgment based upon an evidentiary error in the trial court, an
appellant must also establish that the error probably caused rendition of an
improper judgment in the case or probably prevented the appellant from properly
presenting the case to the appellate court. 
See Tex. R. App. P.
44.1(a); James v. Kloos, 75 S.W.3d 153, 159 (Tex. App.BFort Worth 2002, no pet.).  Furthermore, before harm may be established,
the entire record must be examined to determine whether any excluded evidence
was controlling on a material issue and not cumulative of other evidence.  See Williams Distrib. Co., v. Franklin,
898 S.W.2d 816, 817 (Tex. 1995).

To preserve error in the exclusion of evidence, a
party must make the following showing: 
(1) attempt during the evidentiary portion of the trial to introduce the
evidence; (2) if an objection is lodged, specify the purpose for which the
evidence is offered and give the trial judge reasons why the evidence is
admissible; (3) obtain a ruling from the court; and (4) if the judge rules the
evidence is inadmissible, make a record, through a bill of exceptions, of the
precise evidence the party desires admitted. 
Estate of Veale v. Teledyne Indus., Inc., 899 S.W.2d 239, 242
(Tex. App.BHouston [14th Dist.] 1995, writ denied) (citations
omitted).

Here, after the trial court ruled against allowing
the alleged bias evidence, Gill made a bill of exceptions.  In her bill, she attempted to make a record
of the precise evidence she desired admitted, that is, Dr. McNish=s bias due to the payments made by Slovak=s insurer to Dr. McNish=s employer. 
The following exchange occurred: 

Counsel:         Dr. McNish, isn=t it true that Allstate has paid Biodynamics
Research Corporation for the year 1996 through 2001 between one million and two
million dollars directly to Biodynamics Research Corporation?

 

Dr. McNish:    I don=t know.

 

. . . . 

 








Counsel:         Okay. 
And having been made aware of the fact that Biodynamics Research
Corporation has received from Allstate, the company paying the bills in this
case for the defense, that that would give some bias to the testimony that you=re offering?

 

Dr. McNish:    Well, since I didn=t even know until you told me, it couldn=t very well have biased me.

 

Given that Dr. McNish
denied all knowledge of any relation between his company and Slovak=s insurance provider, we see that Gill failed to
establish bias evidence in the bill for the record.  Furthermore, the various exhibits filed in
conjunction with the bill which, she alleges, further establish bias by
demonstrating the payments made by Slovak=s insurer to Biodynamics, are not included in the
appellate record.  We are therefore
unable to determine whether they independently served to establish Dr. McNish=s bias.  See
Tex. R. App. P. 38.1.  

Given the evidence
available to us, we see that Gill would have been unable to establish Dr.
McNish=s personal bias had the trial court allowed Gill to
examine Dr. McNish as she desired on the question of payments made to his
company.  Dr. McNish did not admit to any
bias or to any knowledge of the underlying facts which allegedly established
his bias.  Therefore, we conclude that
the examination of Dr. McNish on the question of bias would not have been
material to the outcome of the case, and regardless of whether the exclusion of
this evidence was erroneous, it could not have caused the rendition of an
improper judgment in the case.  See
James, 75 S.W.3d at 159.  Gill=s fourth issue is overruled.  

Conclusion

The judgment of the trial court is
affirmed.








 

                                                                                                      Rogelio Valdez,

Chief Justice

 

 

 

Memorandum Opinion delivered and filed

this 27th day of October, 2005.











[1]For example, Dr. McNish made the
following statements throughout his testimony: 

 

[T]he forces of the accident do not put any extra stress on that
abnormality that she had in her back. . . . . [T]he forces of the accident do
not do anything to make this condition that she=s had for years worse. . . .  I found significant in the medical records
that Ms. Gill had had low back problems for a long time; that recommendation
had been made for surgery; that as far back as 1981 she had had neck pain
documents in her medical records . . . . 
[I]t is my opinion that the stress to her neck from this event did not
have anything to do with either causing or worsening the problem for which she
underwent surgery sometime later. . . . 
We know she was on anti-anxiety medication, so someone with a high
anxiety level would be likely to tense up more than someone else. . . .